**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**BRIANNA MCMILLEN,**  MOVANT

**V.**  NO.: 1:10CR40-SA

**UNITED STATES OF AMERICA,**  RESPONDENT

**MEMORANDUM OPINION AND ORDER**

Brianna McMillen, a federal prisoner, is proceeding *pro se* on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The government has submitted a response to McMillen's motion. Having considered the pleadings and the record, including the relevant parts of McMillen's underlying criminal case, along with the relevant law, the Court finds that an evidentiary hearing is unnecessary[1], and that McMillen's § 2255 motion should be denied.

**Background Facts and Relevant History**

In March 2010, an officer with the Tupelo Police Department monitoring the sharing of files containing known images of child pornography on peer to peer ("P2P") networks discovered that a certain Internet Protocol ("IP") address in Tupelo, Mississippi, was being used to share such files. A state grand jury subpoena was issued to Comcast, the internet service provider, at the officer's request. Comcast reported that the IP address sharing the files was

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). Accordingly, if there is no "independent indicia of the likely merit" of the allegations made in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citation omitted).

assigned to a customer at 552 Highway 178, in Lee County, Mississippi, just outside of the Tupelo city limits. Because the location was outside of his jurisdiction, the officer gave the information to Lee County Deputy Sheriff Danny Giroux. Giroux secured another grand jury subpoena to Comcast regarding assignment of the IP address during the relevant time frame, and Giroux, along with Lee County Deputy Sheriff James Cunningham, searched the internet and found satellite images of the address. This internet search occurred after law enforcement attempted surveillance on the address but could not see any buildings visible from Highway 178. They also checked with electric and other utility services to determine who controlled the residence, and they determined that the services were linked to the subscriber to whom Comcast had assigned the IP address in question.

A search warrant was obtained for the residence located at Highway 178 in Lee County. Upon arrival at the location, the officers discovered two residences: a trailer and a brick house. Giroux called Assistant United States Attorney Paul Roberts, who advised the officers that although the warrant was good for all dwellings at the address, they should attempt to ascertain which dwelling was the more likely spot of the internet presence. Using their cell phones, the officers discovered an internet wireless network emanating from the trailer, but no signal emanating from the house. While the officers were engaged in determining the origin of the internet presence, Brianna McMillen drove up to the trailer and asked what was happening. When Giroux advised her that the officers were there to investigate the presence of child pornography, McMillen admitted that she stored movies of child pornography on a computer in a directory named "bad." She was placed under arrest and advised of her *Miranda* rights.[2]

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Officers asked for and received McMillen's consent to search her trailer. McMillen also gave an oral statement advising that she had searched for, downloaded, stored, and viewed movie files of child pornography. McMillen's husband, Christopher McMillen, was not present during the search or McMillen's statements to the officers.

As a result of the search of the residence, the officers seized, among other things, computers belonging to McMillen and her husband. Later examinations of the computers resulted in the discovery of multiple movies and images of child pornography on both McMillen and her husband's computers. An external hard drive was found in the trailer which contained hundreds of additional movie files and images of child pornography.

Officers contacted Christopher McMillen and advised him that they wanted to question him, and he came to the Sheriff's Department. He stated that he had spoken with an attorney who advised him not to say anything about the case, and that while he would not give a written statement, he would answer the officers' questions. Christopher McMillen then gave an oral statement admitting that he had searched for, downloaded, and received child pornography on P2P networks.

Both McMillen and her husband were indicted in two-count indictment charging her with distributing child pornography and charging both with possessing child pornography. Various motions to suppress the evidence from the trailer were filed by both McMillen and her husband, and McMillen filed a motion to exclude her admissions.

Ultimately, the parties reached a plea agreement calling for a sentencing cap as to McMillen, and the Court set a plea hearing. After hearing the plea and reviewing the proposed agreement, the Court elected to reject the plea agreement and afforded McMillen the opportunity

to retract her guilty plea. Thereafter, the Court held another suppression hearing and rejected the motions to suppress evidence. The Court found that McMillen gave sufficient consent to search and noted that she even executed a consent to search form prior to the officers' entry of the trailer. (*See* ECF No. 89, Order on Motion to Suppress, March 30, 2011). The Court also determined that the officers acted in good faith reliance on the search warrant. (*Id*.).

Brianna McMillen subsequently pleaded guilty to possession of child pornography and was sentenced on August 2, 2011, to, among other punishments, a 97-month term of incarceration. (ECF No. 117). The Judgment was filed on August 11, 2011. (*Id*). Despite preserving her right to appeal the denial of her suppression motions, McMillen did not appeal her sentence or the rejection of her various pretrial motions. McMillen's husband, Christopher McMillen, was also indicted on child pornography charges and went to trial, where he was convicted and sentenced to a 10-year term of incarceration. Christopher McMillen unsuccessfully appealed his conviction, raising many of the same issues McMillen now raises in the instant motion. *See United States v. McMillen*, 484 F. App'x 885 (5th Cir. July 31, 2012).

McMillen purportedly signed the instant § 2255 motion on July 16, 2012. (*See* ECF No. 133, 6). It was received by the Court on September 5, 2012. (*Id.* at 16).

**Legal Standard**

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set

4

aside, or correct a sentence under § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. Collateral attack limits a defendant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

Additionally, a motion filed under § 2255 must comply with the statute's one-year period of limitation, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

## Discussion

Judgment in this case was entered on August 11, 2011. McMillen did not pursue a direct appeal, which she had fourteen days to do following entry of judgment. *See* Fed. R.App. P. 4(b).

McMillen's sentence, therefore, became final on August 25, 2011, fourteen days after the entry of judgment. *See United States v. Plascenia*, 537 F.3d 385, 388 (5th Cir. 2008) (holding that where a defendant does not file a direct appeal, a conviction becomes final for purposes of § 2255(f)(1) upon the expiration of time for filing a direct appeal under Federal Rule of Appellate Procedure 4(b)). Accordingly, the instant motion was due by August 25, 2012.

Because a habeas petition is deemed filed when it is "handed over to prison authorities for mailing," its timeliness depends "on when [the petitioner] delivered his papers to prison authorities for filing." *Spotville v. Cain*, 149 F.3d 374, 376-77 (5th Cir. 1998). This Court would ordinarily presume that the date the petition was signed is the date it was delivered to prison authorities for mailing. In this case, however, there is no indication that McMillen delivered her motion to prison officials on the "signed" date of July 16, 2012, as the envelope containing the motion shows postage paid for in Tupelo, Mississippi on September 4, 2012.[3] Therefore, the Court determines that the applicable mailing date in this case is the date the envelope bearing the motion was stamped by the United States Postal Service – September 4, 2012. The Court finds, then, that McMillen filed the instant motion approximately ten days after the statute of limitations expired, and that it is untimely.

However, even McMillen's motion were not time barred, the Court finds that she would not be entitled to relief. Out of an abundance of caution, the Court now addresses the merits of

---

[3] The return address on the envelope containing McMillen's § 2255 motion is for an address in Saltillo, Mississippi. There is no information in the record as to where McMillen was housed in July or September 2012. However, the Court notes that as of January 2012, McMillen was housed in a federal penitentiary in West Virginia. (*See, e.g.*, ECF No. 122 and 135-1). According to the Federal Bureau of Prisons website, McMillen is currently housed at a federal facility in Aliceville, Alabama.

McMillen's claims.

## A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to the "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Whether counsel has rendered constitutionally acceptable assistance requires consideration of whether trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and whether the deficient performance actually prejudiced the defense. *See id.* at 687. Because judicial scrutiny of an attorney's performance is "highly deferential," a reviewing court indulges a "strong presumption" that counsel has rendered "reasonable professional assistance." *Id.* at 689.

Even if counsel committed professionally unreasonable errors, however, such "does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense." *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984) (citation omitted). In order to make the requisite showing of prejudice, a defendant must show that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694 (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Absent an affirmative showing of prejudice, there is no merit to a claim of ineffective assistance of counsel. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (noting that "[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial," there is no merit to an ineffective assistance of counsel claim). The failure to prove either deficient performance by counsel or actual prejudice

as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *Strickland*, 466 U.S. at 697; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). Moreover, unsupported allegations are insufficient to sustain a claim of ineffective assistance. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (holding that vague and/or "conclusional allegations" are insufficient to establish ineffective assistance or to require an evidentiary hearing on the issue).

*1. Appeal of Denial of Suppression Motions*

McMillen complains that trial counsel "failed to file appeals on numerous suppression issues, even after [she] made clear that was her intent" and that her counsel "didn't assist in obtaining counsel on an appellate level." (Pet., ECF No. 133, 12). The United States Supreme Court has held that an attorney renders ineffective assistance if she disregards a client's specific instruction to appeal from a conviction or sentence or, in certain situations, when she fails to consult with her client about an appeal. *Roe v Flores-Ortega*, 528 U.S. 470, 477, 480 (2000) (citations omitted).

Attached to the government's response to McMillen's motion is a January 30, 2012, letter to McMillen from her trial counsel in which counsel stated she had engaged in "numerous conversations" with McMillen advising her that an appeal was not part of her retained representation of McMillen, which ended when sentencing was concluded. (*See* Gov't Response, ECF No. 135-1). In the letter, counsel also advised McMillen that she would need to hire a different attorney if she wished for an attorney to pursue an appeal on her behalf. (*Id.*). Also attached to the government's response is an affidavit from McMillen dated April 1, 2011, in which she states: "[I]t is my understanding that I preserve the right to appeal the suppression

issues in the event I elect to appeal them." (*Id.*).

First, the Court notes that McMillen has not offered any evidence of when or how she made her appeal wishes known to counsel. Further, "[a] retained attorney has no obligation to file a notice of appeal absent an agreement to do so." *United States v. Welch*, 980 F.2d 1443, 1992 WL 366814, at *2 (5th Cir. Dec. 1, 1992) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). The Court has no question that McMillen understood at the time of her plea and her sentencing that she retained the right to appeal the denial of her suppression motions. The evidence submitted by the government demonstrates that McMillen's retained counsel advised McMillen that she would need to retain different counsel for purposes of appeal, and that McMillen had been advised numerous times that an appeal was not part of counsel's employment contract with McMillen. McMillen has not offered any evidence or presented any argument to suggest otherwise. The Court finds, therefore, that this issue is without merit.

Additionally, as Respondent notes, even if McMillen had appealed, she could not demonstrate *Strickland* prejudice with regard to the suppression motions, as McMillen's husband did appeal, and the Fifth Circuit affirmed this Court's denial of the suppression motions. *See McMillen*, 484 F. App'x at 887-88.

*2. Alleged inexperience; failure to meet with McMillen; late offers of evidence; failure to assist with finding evidence; and failure to assist at sentencing*

McMillen argues that her counsel was inexperienced in Federal procedures, that she had difficulty meeting with counsel, that her counsel did not raise certain issues regarding the search and investigation, that she did not raise certain sentencing issues before the Court, and that she did not assist McMillen with obtaining appellate counsel. McMillen offers no specifics about

9

these alleged defects, and she does not offer evidence or grounds regarding how these alleged deficiencies harmed her case.

The presumption is "that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Bell v. Cone*, 535 U.S. 685, 702 (2002). At the taking of her guilty plea, McMillen expressed her satisfaction with her counsel. The Court finds McMillen's argument to be conclusory and insufficient to merit relief. *See, e.g., Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1988) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

**B. Prosecutorial Misconduct**

McMillen next argues that counsel for the government committed various acts of prosecutorial misconduct, such as failing to produce certain evidence regarding the timing of events during the search of her residence; failing to properly disclose a list of file names of child pornography files; and hiding testimony regarding the timing events in the home, including the use of a cell phone picture of her computer's time and date.

Habeas relief may be granted on a claim of prosecutorial misconduct only where the errors committed by the prosecutor "had substantial and injurious effect or influence in determining the jury's verdict." *See United States v. Moyo*, 2012 WL 2190787, at *6 (E.D. La. June 14, 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). In this case, the Court held two suppression hearings. All of the issues raised in this motion regarding the use of evidence in an unconstitutional manner were heard and denied by this Court. The Court has been presented no evidence to indicate prosecutorial misconduct or misconduct by the investigating agents. A claim of prosecutorial misconduct must be specific and substantiated. *United States v. Jones*, 614 F.2d

80, 82 (5th Cir. 1980). Accordingly, the Court finds McMillen's conclusory allegations are insufficient to support her claims. *See, e.g., Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

**C. Evidentiary Flaws**

McMillen alleges various flaws in the evidence in this case used to obtain a conviction against her.

*1. Alleged infirmity of search warrant*

McMillen alleges that her conviction was obtained through use of evidence gained from an unconstitutional search of her residence, as the search warrant was for a residence at an address on Highway 178, and her residence was separately designated as being "TRLR" at the address. This issue was litigated in her motions to suppress. She retained the right to appeal the suppression issues but chose not to exercise that right and did not seek judicial review of the suppression issues. Moreover, the search warrant was upheld by the Fifth Circuit in her husband's appeal, and therefore, she cannot demonstrate any prejudice. *See McMillen*, 484 F. App'x at 887-88.

*2. Alleged use of false evidence*

McMillen alleges that the officer's attempts to obtain information about the Highway 178 address and testimony about it was false, because officers used satellite photographs from the internet in order to investigate the address. The issues were raised before the Court in the two suppression hearings and were rejected. This issue was examined and questioned by McMillen and her husband's counsel at the hearings. The Fifth Circuit ruled against this argument in Christopher McMillen's appeal:

> The suppression hearing further indicates that the officers made diligent efforts to determine which residence was the likely target once it was discovered that there

> were two residences on the property. After interviewing the resident of the brick house and determining that he was not likely the perpetrator, the officers inspected the internet cables and determined that the trailer was the source of the internet connectivity. Further, utilizing a cell phone, officers determined that a wireless internet signal was emanating from the trailer. Officers then contacted the electric company and discovered that the trailer had the same address as listed in the search warrant: "552 Highway 178." Finally, officers sought legal advice from the Assistant United States Attorney who informed the officers that the search warrant was good for both residences. Based on these factors, "[t]here was no deliberate, reckless or grossly negligent conduct by law enforcement officers" to warrant application of the exclusionary rule. As the district court determined, the officers acted in good faith in executing the search warrant.

*McMillen*, 484 F. App'x at 887 (internal citations omitted). This issue is without merit.

*3. No need for forensic examiner certification*

McMillen next argues that the agents were not certified to conduct forensic examinations of her and her husband's computers. There is no requirement that an agent be certified in computer forensic examination prior to examining computer evidence, and McMillen points to no such requirement. Moreover, McMillen identified the file directory on her computer where the movie files of child pornography would be found prior to the execution of the search of her trailer and subsequent search and seizure of her computer. McMillen has offered no evidence or sufficient allegation that there was anything "false" about the evidence presented in this case. This issue is without merit.

*4. Alleged errors reviewed by Court of Appeals*

All of the evidentiary issues were raised and decided adversely to McMillen. While she did not appeal those rulings, her husband elected to go to trial and raised these issues. The Court and jury rejected them. He then appealed the verdict and the suppression rulings, and the Fifth Circuit rejected them. There has been no error shown in this case.

In sum, the Court finds that McMillen's motion is untimely, and that the claims raised herein are without merit.

## Certificate of Appealability

McMillen must obtain a COA before she may appeal the denial of her § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, the Court finds that a COA should not issue in this case.

## Conclusion

The Court hereby finds that McMillen is not entitled to relief under 28 U.S.C. § 2255, and her motion to vacate, set aside, or correct sentence (ECF No. 133) is **DENIED**. A certificate of appealability from this decision is **DENIED**. The Court will enter final judgment by separate order.

**SO ORDERED**, **THIS** the 10th day of September, 2014.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**